UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re
CRESTVIEW FUNERAL HOME, INC.

      Debtor.                                 No. 11-95-11923 MA

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court upon the objection of the United States Trustee to the debtor's application to employ the law firm of Puccini and Little, P.A. ("Puccini"). The Court having heard the arguments of counsel, examined the pleadings and briefs, and being otherwise fully advised, makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. This bankruptcy was commenced by the filing of a Chapter 11 petition on July 5, 1995. An application to employ Puccini as attorney for the debtor was filed simultaneously.

2. After the application to employ was noticed out to all creditors, the United States Trustee and creditor Phyllis Ferguson filed objections to the application.

3. On January 4, 1996, Puccini filed a motion to withdraw as attorney for the debtor. At that time Puccini had never requested a hearing on his

application for employment, and the application remained pending. On February 6, 1996, the Court entered an order approving the employment of Linda Bloom as counsel for the debtor, pursuant to a notice of substitution of counsel filed January 5, 1996.

4. On January 22, 1996, the United States Trustee filed a motion to require Puccini to file a fee application.

5. On February 20, 1996, Puccini wrote a letter to Leonard Martinez-Metzgar, assistant United States Trustee, expressing his intention to file a fee application "soon."

6. By March 12, 1996, Puccini still had not filed a fee application, and the United States Trustee filed a request for hearing on his motion to require the filing. The matter was set for preliminary hearing on March 27, 1996. When Puccini failed to appear, the Court directed the United States Trustee to submit an order setting a deadline for the filing of the fee application. An order setting April 11, 1996, as the deadline for the filing of the fee application was entered on March 28, 1996.

7. Puccini did not file a fee application by April 11, 1996.

8. On June 12, 1996, the United States Trustee filed a motion for an order to show cause why Puccini should not be required to disgorge all fees received from the debtor.

2

9. On July 3, 1996, Puccini finally filed the fee application required by the March 28th order.

10. On July 5, 1996, exactly one year after the filing of the Chapter 11 petition, Puccini filed a request for hearing on his application for employment by the debtor.

11. Puccini explains his failure to seek timely approval of his application to be employed by the debtor as being the result of an oversight by his office staff. He further asserts that his employment should be approved on the grounds that his work provided a benefit to the estate and that denial of employment would result in a hardship on the firm.

12. On October 3, 1996, the Court heard the United States Trustee's motion for an order to show cause and for disgorgement of fees. The Court granted the motion and ordered Puccini to disgorge all sums previously received on account of work done for the debtor.

13. On October 9, 1996, the United States Trustee filed notice of a presentment hearing on the order resulting from the Court's ruling on the motion to require disgorgement.

14. On October 10, 1996, Puccini moved for a continuation of the presentment hearing, objecting to the hearing on due process grounds. He also filed a motion to amend the order requiring disgorgement, or in the alternative,

3

a motion for reconsideration.

15. On October 11, 1996, Puccini filed a pleading captioned as a response to the objections to his application for employment and a response to the motion for an order to show cause and for disgorgement of fees (upon which the Court had already ruled).

16. The presentment of the order requiring Puccini to disgorge fees was eventually heard on March 17, 1997. The Court entered the order, amending the language to provide for disgorgement of all sums previously received rather than any specific dollar amount.

17. Despite the Court's order, Puccini did not disgorge any of the money received pursuant to his representation of the debtor and remains in noncompliance with the order.

18. In his statement disclosing compensation, Puccini certified that the firm of Puccini & Little had received, prior to the filing of the statement on July 5, 1995, only a retainer from Lester Salazar in the amount of $5000.00.

19. According to Exhibit A attached to Puccini's application for fees, Puccini received a "miscellaneous trust receipt" from the debtor on July 3, 1995, in the amount of $14,813.25.

20. According to Exhibit A attached to Puccini's application for fees, the total of all "payments and credits" received by Puccini during the period from

4

July 5, 1995, through January 29, 1996, was $45,757.25.

21. Prior to his representation of the debtor in this bankruptcy, Puccini represented John Salazar regarding certain issues in his divorce settlement. John Salazar is the president of the debtor.

22. Puccini states, in his application for compensation, that he has represented only the debtor and not John Salazar.

23. In letters to Darrell Arne dated April 18, 1995, and May 2, 1995, Puccini refers to John Salazar as "my client" and states that "on behalf of John Salazar" he is advising Arne of a position regarding payment of Arne's expenses.

24. Puccini does not disclose this prior representation at all in his application for employment; the application states that the firm has had "no prior connection with Debtor, other than in filing this Petition, and the firm does not represent any of the creditors or any other party in interest . . .."

25. Puccini has exhibited a pattern of failing to obtain Court authority for his employment prior to representation of Chapter 11 debtors.

26. Puccini has exhibited a pattern of collecting fees from Chapter 11 debtors prior to obtaining Court authority for his employment.

CONCLUSIONS OF LAW

27. Employment of an attorney by a debtor-in-possession requires prior approval of the court pursuant to §327(a) of the Bankruptcy Code and Rule

5

2014(a) of the Federal Rules of Bankruptcy Procedure. Professionals who perform services for a debtor-in-possession cannot recover fees for services rendered to the estate unless those services have been previously authorized by court order. In re Atkins, 69 F. 3d 970 (9th Cir. (Cal.) 1995); In re Auto Parts Club, Inc., 191 B.R. 848 (Bankr. S.D. Cal. 1996).

28. The requirement of prior approval is not satisfied by filing an application for approval but only by securing an order of the court granting the application.

29. Local Rule 9013-1(c)(1) provides that a movant "shall promptly request a hearing" when an objection to a motion is filed.

30. Puccini's filing of a request for hearing one year after the filing of his application for approval of employment does not satisfy the requirement for promptness found in Local Rule 9013-1(c)(1).

31. The Court concludes that Puccini did not timely seek prior court approval of his employment by the debtor.

32. The 10th Circuit has found retroactive approval of the employment of professionals to be permissible only in "the most extraordinary circumstances." In re Land, 943 F.2d 1265, 1267 & 8 (10th Cir. (Colo.) 1991).

33. The majority of cases in which an attorney seeks retroactive employment as counsel for a debtor involve failure to file a timely application

6

for approval of employment; however, the general requirement that extraordinary circumstances are necessary to excuse a professional's failure to get advance approval for employment is applicable even where the application has been pending while services were being performed for the estate by the professional. *See:* In re Rheam of Indiana, Inc., 133 B.R. 325 (E. D. Pa. 1991).

34. Puccini cannot excuse his failure to obtain timely court approval of his employment on the basis of inadvertence. Inadvertence or negligence does not constitute exceptional circumstances which justify the retroactive approval of the appointment of counsel. *See:* In re Shirley, 134 B.R. 940 (9th Cir. BAP (Cal.) 1992). Tardiness occasioned merely by oversight does not qualify as extraordinary circumstances. In re Jarvis, 53 F.3d 416 (1st Cir. (R.I.) 1995).

35. The Court concludes that no extraordinary circumstances exist in this case which would justify Puccini's failure to obtain timely approval of his employment. Whether extraordinary circumstances exist which justify retroactive employment of a professional is a matter within the sound discretion of the bankruptcy court. In re Rheam of Indiana, 133 B.R. 325 (E.D. Pa. 1991); In re Jarvis, 53 F.3d 416 (1st Cir. (R.I.) 1995).

36. Even if the Court were to apply the more lenient standard of "excusable neglect," Puccini's pattern of doing work first and seeking approval

7

from the bankruptcy court later is definitely not "harmless neglect," but instead is neglect of a nonexcusable kind. *See:* Matter of Singson, 41 F.3d 316 (7th Cir. (Wis.) 1994).

37. It is immaterial and irrelevant to a decision on retroactive approval of an application for employment as counsel for a Chapter 11 debtor whether counsel has provided beneficial services to the debtor. In re T & D Tool, Inc., 132 B.R. 525 (E. D. Pa. 1991).

38. Any hardship on a professional if compensation is denied and the value of the services that a professional has provided to the estate are factors that may not properly be considered in an application for retroactive employment of a professional. In re Rheam of Indiana, 133 B.R. 325 (E.D. Pa. 1991).

39. The Court concludes that Puccini is not entitled to retroactive approval of his employment as counsel for the debtor on the basis of excusable neglect, hardship, or benefit provided to the estate.

40. The Court also concludes that Puccini made no full and appropriate disclosure of his prepetition representation of John Salazar. To employ a professional in a bankruptcy case, the professional's connections with creditors, insiders, and parties-in-interest must be disclosed, no matter how trivial. The purpose of these disclosure requirements is to ensure that all relevant facts are

8

revealed, thereby allowing the court and other parties-in-interest to determine whether further inquiry should be made before approving the application. *See:* Matter of Crivello, 194 B.R. 463 (Bankr. E.D. Wis. 1996).

41. Puccini's prior representation of John Salazar raises the possibility of a conflict. Puccini cannot satisfy the requirement found in §327(a) that a professional must be disinterested before employment may be approved. In exercising discretion to limit fees when a professional representing the bankruptcy estate ceases to be disinterested, the bankruptcy court should lean strongly toward denial of fees. Gray v. English, 30 F.3d 1319 (10th Cir. (Okl.) 1994).

42. The Court also concludes that Puccini has failed to make full and appropriate disclosure regarding his compensation by the debtor and that Puccini's disclosures regarding his compensation are incomplete, contradictory, and misleading. The failure to provide the bankruptcy court with a complete and accurate disclosure of prepetition transactions may result in the denial of the attorney's retention application and in the disgorgement of all payments made and retainers provided. In re Lincoln North Associates, Ltd. Partnership, 155 B.R. 804 (Bankr. D. Mass. 1993); In re Maui 14k, Ltd., 133 B.R. 657 (Bankr. D. Hawaii 1991).

43. Since October 3, 1996, Puccini has been and remains in violation of

9

the Court's order requiring disgorgement of all sums received in connection with his representation of the debtor.

    44. Puccini's application for employment by the debtor should be and HEREBY IS DENIED. An appropriate order will be entered.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

I certify that on the above stamped date I mailed a copy of the above to:

Mr. Louis Puccini, Jr.
Attorney at Law
PO Box 30707
Albuquerque, NM  87190-0707

Mr. Leonard K. Martinez-Metzgar, Attorney
Office of the United States Trustee
PO Box 608
Albuquerque, NM  87103-0608

Ms. Linda S. Bloom
Attorney at Law
PO Box 218
Albuquerque, NM  87103-0218
(505)  764-9600

_____
Dinah N. Martinez

Secretary to Judge McFeeley
(505) 248-6526

11

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re
CRESTVIEW FUNERAL HOME, INC.

        Debtor.                  No. 11-95-11923 MA

<u>ORDER DENYING APPLICATION</u>
<u>TO EMPLOY ATTORNEY FOR DEBTOR</u>

IN ACCORDANCE WITH the Findings of Fact and Conclusions of Law entered herewith, the application of Puccini & Little, P.A. to be employed as counsel for the debtor is denied.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

I certify that on the above stamped date I mailed a copy of the above to:

Mr. Louis Puccini, Jr.
Attorney at Law
PO Box 30707
Albuquerque, NM 87190-0707

Mr. Leonard K. Martinez-Metzgar, Attorney
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Ms. Linda S. Bloom

12

Attorney at Law
PO Box 218
Albuquerque, NM  87103-0218
(505) 764-9600

```
                              _____
                              Dinah N. Martinez
                              Secretary to Judge McFeeley
                              (505) 248-6526
```

13